IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JON M. COSTELLOW, INDIVIDUALLY § | | |
| AND ON BEHALF OF ALL THOSE § | | |
| SIMILARLY SITUATED § | | CASE NO. 1:20-cv-00179 |
| § | | |
| v. § | | JUDGE MICHAEL TRUNCALE |
| § | | |
| BECHT ENGINEERING CO., INC. § | | |

## OPINION AND ORDER

Before the Court is Plaintiffs Jon M. Costellow ("Costellow"), John M. Triplett ("Triplett"), Carl Hebert ("Hebert"), and Bruce Hallman's ("Hallman") (collectively, "Named Plaintiffs") Opposed Motion to Certify a Collective Action Pursuant to Section 216(b) of the Fair Labor Standards Act and to Approve a Proposed Notification to All Putative Collective Action Members [Dkt. 19] and Named Plaintiffs' Supplemental Motion to Certify a Class [Dkt. 33]. The Court has considered the Motions, all other relevant filings, and the applicable law. For the reasons stated below, the Court finds that Named Plaintiffs' Opposed Motion to Certify a Collective Action Pursuant to Section 216(b) of the Fair Labor Standards Act and to Approve a Proposed Notification to All Putative Collective Action Members [Dkt. 19] is GRANTED IN PART and Named Plaintiffs' Supplemental Motion to Certify a Class [Dkt. 33] is GRANTED.

### I. BACKGROUND

*1. Factual History*

Defendant Becht Engineering Co., Inc. ("Becht") provides, among other things, engineering consulting, plant services, and software tools to the energy sector. [Dkt. 21-2, p. 1-2]. Becht's Plant Services Division provides services such as maintenance and human performance to its clients. *Id.* at 2. The Plant Services Division is responsible for Becht's Valero Refinery project ("Valero

Refinery") in Port Arthur, Texas. *Id.* Named Plaintiffs all worked or work at the Valero Refinery performing a variety of work and services. [Dkt. 6, p. 5; Dkt. 7, p. 3]. All four Named Plaintiffs reported to the site manager, Danny Davis ("Davis"). [Dkt. 21, p. 8].

Costellow was employed by Becht as a Planner from approximately November 2018 to April 2020. [Dkt. 6, p. 2; Dkt. 7, p. 2]. Triplett was employed as a Scheduler from approximately November 2018 to December 2019. [Dkt. 6, p. 2-3; Dkt. 7, p. 2]. Hallman was employed as a Senior Cost Control Advisor from approximately January 2019 to September 2019. [Dkt. 6, p. 3; Dkt. 7, p. 2]. Hebert has been employed as a Field Execution Coordinator from approximately December 2018 through the present. *Id.*

Named Plaintiffs claim that they were not paid overtime for hours they worked in excess of forty hours in any given workweek in violation of the Fair Labor Standards Act ("FLSA").[1] [Dkt. 6]. It is undisputed that Defendant's payroll system used a single hourly rate to pay wages for all hours worked, including hours over forty in a workweek. [Dkt. 6, p. 5; Dkt. 7, p. 3]. It is further undisputed that the single rate was used by Becht from the Named Plaintiffs' respective dates of hire through the two-week pay period ending December 20, 2019. [Dkt. 23, p. 3; Dkt. 7, p. 3]. Other employees who worked at the same location as Named Plaintiffs were paid under the same single rate pay system. [Dkt. 7, p. 3]. Triplett alleges that as a Scheduler, he saw the recorded hours employees were working, and saw that all employees at the Valero Refinery worked more than forty hours in a workweek. *Id.* at 5. Hallman alleges that as a Cost Control Advisor, he had access to information regarding the hours worked by each employee at the work site and how much each employee was paid. *Id.* at 11. Hallman alleges that, based on his access to this information, he knew

---

[1] Each Named Plaintiff submitted an affidavit in support of their motion to certify a collective action. [Dkt. 19-1].

Becht never paid overtime wages to any employees at the Valero Refinery during Hallman's employment. *Id.* at 11-12.

Hallman and Triplett also claim that they heard complaints from other employees regarding the lack of overtime pay. *Id.* at 6, 12. Similarly, Costellow and Triplett claim that based on their conversations with other employees, others want to be paid their overtime wages and will opt in to this lawsuit if they are given adequate assurance that they will not be retaliated against. *Id.* at 3, 6. Hebert claims that, after this suit was filed, Becht asked him, and other employees, to sign an arbitration agreement regarding wage and hour claims. [Dkt. 19-1, p. 9]. Hebert believes that this was an attempt to prevent him from pursuing this lawsuit and that this incident made other employees afraid to join as well. *Id.*

Named Plaintiffs also assert that Becht's single rate pay system was used at other worksites beyond the Valero Refinery. [Dkt. 19, p. 9]. Specifically, Plaintiffs allege that Costellow and Triplett attended an orientation meeting, during which, Becht's management stated that its pay system was also used at other worksites. [Dkt. 19-1, p. 3, 6]. Plaintiffs further claim that management mentioned a site in Alaska that used this system. [Dkt. 19-1, p. 3, 6].

In opposition to Named Plaintiffs' motion, Becht submitted an affidavit from a former employee, Robert Blake Riley ("Riley"). [Dkt. 21-2]. According to Riley, Triplett spoke with him regarding this lawsuit in May 2020. *Id.* at 2. Riley also claims that he was contacted by a law firm representing Costellow in this matter, asking Riley if he or anyone he knew would be interested in joining the lawsuit. *Id.* Riley asserts that he answered "no." *Id.* Riley also asserts that, like Hebert, he was asked to sign an arbitration agreement, but that it had no influence on his decision to not join this lawsuit. *Id.* Riley claims that he spoke with another employee at the Valero Refinery who also was not interested in joining Named Plaintiffs' lawsuit. *Id.* at 3. According to Riley, Named

Plaintiffs' lawsuit is common knowledge at the Valero Refinery, and Riley believes that no other employees are interested in joining the case. *Id.*

### 2. *Procedural History*

On April 27, 2020, Costellow filed a Complaint against Defendant, alleging that Defendant failed to pay him the required overtime rate under the FLSA. [Dkt. 1]. On May 5, 2020, Triplett opted-in to the action, and Costellow and Triplett filed their First Amended Collective Action Complaint. [Dkt. 3]. On May 7, 2020, Costellow and Triplett filed their Second Amended Collective Action Complaint. [Dkt. 4]. On May 8, 2020, Hallman and Hebert opted-in and all four Named Plaintiffs filed their Third Amended Collective Action Complaint. [Dkt. 6]. Defendant filed its Answer on May 27, 2020, generally denying Named Plaintiffs' allegations and asserting that it believed, in good faith, that its pay practices with respect to the Named Plaintiffs comported with the requirements of the FLSA. [Dkt. 7]. On May 29, 2020, Named Plaintiffs filed an Emergency Motion for a Protective Order and/or Temporary Injunction, seeking an order "limiting Defendants' communications with the Named Plaintiffs and putative class and enjoin[ing] Defendants, during the pendency of this lawsuit, from taking acts to prevent or affect the rights of the Named Plaintiff[s] and putative class members to pursue the claims and collective action relief sought in this lawsuit." [Dkt. 9, p. 1]. Named Plaintiffs later agreed to withdraw their emergency motion before any hearing was held on the matter. [Dkts. 9, 15].

On July 1, 2020, Named Plaintiffs filed this Opposed Motion to Certify a Collective Action Pursuant to Section 216(b) of the Fair Labor Standards Act, and to Approve a Proposed Notification to All Putative Collective Action Members [Dkt. 19]. On July 21, 2020, Named Plaintiffs filed a motion to compel discovery pertaining to the scope of Defendant's corporate Single Rate Payroll System. [Dkt. 26]. On October 2, 2020, Plaintiffs filed an Opposed Motion for Equitable Tolling

[Dkt. 22] and a Supplemental Motion to Certify a Class. [Dkt. 23]. These motions are still pending before the Court. Named Plaintiffs now seek conditional certification of a nationwide putative class and ask the Court to certify the following class:

> All current and former hourly or salaried non-exempt workers who worked for Defendant during the prior three years who were paid a single hourly rate for all hours worked, including hours over 40 in a workweek, and did not receive overtime wages at the correct overtime rate of 1.5 times their regular rate of pay.

[Dkt. 19, p. 3].

## II.   LEGAL STANDARD

Section 7 of the FLSA requires covered employers to pay each non-exempt worker an overtime rate for each hour worked over forty in a workweek. 29 U.S.C. § 207(a). The required overtime rate is not less than one and one-half times the regular rate at which an employee is employed. *Id.* Section 216(b) provides employees the right to bring a claim against an employer for unpaid overtime on "behalf of . . . themselves and other employees similarly situated." *Id.* § 216(b). Similarly situated employees may opt-in to a lawsuit for unpaid overtime under Section 207(a). *Id.* § 207(a).

To determine whether employees are similarly situated, courts generally use one of two analyses: (1) the two-stage analysis described in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D. N.J. 1987), or (2) the "spurious class action" analysis described in *Shushan v. Univ. of Colo.*, 132 F.R.D. 263 (D. Colo. 1990). *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995) (expressly declining to decide which of the two analyses is appropriate), overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Most district courts in the Fifth Circuit use the *Lusardi* approach. *See, e.g.*, *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011) ("The Lusardi two-stage approach is the prevailing standard among federal courts . . .

and is the standard most frequently used by this court.").[2] The Court will, therefore, use the prevailing two-stage *Lusardi* approach.

The first stage of the *Lusardi* approach is referred to as the "notice stage." *Mooney*, 54 F.3d at 1213. During the notice stage, the court determines whether notice of the action should be sent to potential opt-in plaintiffs and whether the case should initially proceed as a class action. *Id.* at 1214. If conditional certification is granted at the notice stage, the action proceeds through discovery as a collective action. *Id.* During the second stage, the court determines whether the case should continue to trial as a collective action. *Id.*

This case is under the notice stage of the *Lusardi* approach. At the notice stage, plaintiffs bear the burden of presenting preliminary facts showing that potential similarly situated plaintiffs exist. *Id.*; *see also Hernandez v. Robert Dering Constr., LLC*, 191 F. Supp. 3d 675, 681 (S.D. Tex. 2016) ("[P]laintiffs need only show that there is a reasonable basis for believing that other aggrieved individuals exist.") (citing *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012). This determination is made using a lenient standard requiring only substantial allegations that the putative class members were victims of a single decision, policy or plan, and it "typically results in a 'conditional certification' of a representative class." *Pedigo v. 3003 S. Lamar, LLP*, 666 F. Supp. 2d 693, 697 (W.D. Tex. 2009) (quoting *Mooney*, 54 F.3d at 1214). Plaintiffs are not required to show that the positions of potential class members are identical to plaintiffs and courts do not evaluate the merits of plaintiffs' claims at this stage. *Tice*, 826 F. Supp.2d. at 995. ("The merits stage typically occurs after discovery is mostly complete and upon motion by the defendant.").

---

[2] *See also e.g.*, *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 861 (S.D. Tex. 2012) ("Most courts use the *Lusardi* approach."); *Potter v. Cardinal Health 200, LLC*, 381 F. Supp. 3d 729, 736 (E.D. Tex. 2019) ("The majority of district courts within the Fifth Circuit have adopted the *Lusardi* approach."); *Jones v. AbClean, Inc.*, No. 1:08-CV-508, 2010 WL 11531074, at *3 (E.D. Tex. Feb. 8, 2010) ("The two-step approach . . . is the predominant test utilized by federal courts."); *Vassallo v. Goodman Networks, Inc.,* No. 4:15CV97, 2015 WL 3793208, at *2 (E.D. Tex. June 17, 2015) ("The majority of courts within the Fifth Circuit have adopted the two-stage approach found in [*Lusardi*].").

While the preliminary showing required under the first stage of the *Lusardi* approach is lenient, it is not an empty standard and "must be based on competent evidence in order to avoid allowing unwarranted litigation." *Id.* Competent evidence means, at the very least, "that the preliminary factual showing must be based on a personal knowledge of the facts." *Id.*; *see also Vogt v. Texas Instruments, Inc.*, 2006 WL 4660134, at *3 (N.D. Tex. Sept. 19, 2006) (finding plaintiff's declaration inadmissible for lack of personal knowledge). If the district court conditionally certifies the class, putative class members are given notice and an opportunity to opt-in. *Mooney*, 54 F.3d at 1214.

The Court also "has the power to modify an FLSA collective action definition on its own" if the "proposed class action does not encompass only similarly situated employees." *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931–32 (5th Cir. 2005); *see, e.g.*, *Reyes v. Bona 1372, Inc.*, No. 1:17-CV-16, 2017 WL 5148367, at *4 (E.D. Tex. Oct. 17, 2017), *report and recommendation adopted*, No. 1:17-CV-16, 2017 WL 5147182 (E.D. Tex. Nov. 6, 2017) (tailoring the plaintiff's proposed putative class).

### III.   DISCUSSION AND ANALYSIS

Named Plaintiffs argue that their motion to certify a collective action should be granted because they and all members of the putative class were "(a) hourly or salaried non-exempt employees; (b) who were subjected to Single Rate Payroll System which did not calculate the overtime rate or pay overtime wages in compliance with the FLSA." [Dkt. 19, p. 10]. Defendant argues that Plaintiffs have failed to satisfy their evidentiary burden at the notice stage and the request for certification should be denied. Defendant also argues that if the class is certified, the scope should be narrowed. *Id.* at 19. For the reasons stated below, the Court finds that the class should be certified and that the scope of the requested class should be narrowed.

### A. Collective Action Certification

As a preliminary matter, the Court acknowledges Defendant's arguments that the Plaintiffs presented inadmissible evidence regarding the existence of other aggrieved individuals and other worksites using the same pay system. [Dkt. 21, p. 14]. Arguably, some of the statements contained within the declarations are hearsay or otherwise may be inadmissible at trial. However, the Court disregarded such allegations in shaping its ruling. The Court finds that the remaining portions of the declarations relevant to the Plaintiffs' motion for conditional class certification concerning the Defendants' pay practices are based on personal knowledge and, therefore, admissible. The four declarations submitted by the Plaintiffs demonstrate the existence of potential class members.

Defendant argues that Plaintiffs have not met their evidentiary burden because (a) there is no evidence of a common pay policy or plan; (b) the Named Plaintiffs are not similarly situated to the putative class members; (c) Plaintiffs have failed to demonstrate others are interested in joining the lawsuit; and (d) the claims and defenses in this case are not appropriate for collective active treatment. [Dkt. 21].

### i. *Is there a common pay policy or plan?*

Defendant argues that the Plaintiffs failed to establish the existence of a common pay policy or plan. [Dkt. 21, p. 10]. Specifically, Defendant claims that Plaintiffs do not state in their declarations that "they have any personal or first-hand knowledge of any alleged wrongful practice outside of their own situation." [Dkt. 21, p. 11]. The court disagrees. All four Named Plaintiffs asserted that they were paid hourly, and that they worked more than forty hours most weeks but were not paid at the required overtime rate. [Dkt. 19-1]. Plaintiff Triplett asserted that, as a Scheduler, he had personal knowledge of the recorded hours other employees were working and that all employees worked more than forty hours a week at the time. *Id.* at 5. Hallman asserted that he was responsible

for tracking costs and thus had personal knowledge that employees were working over forty hours a week and not being paid an overtime rate. *Id.* at 11. Further, the Defendant, in its Answer, acknowledged that other employees who worked for Becht at the same location as the Named Plaintiffs were paid under the same pay system as the Named Plaintiffs were paid. [Dkts. 7, 3]. Defendant also acknowledged that all four Named Plaintiffs held similar roles. [Dkt. 21, p. 12]. Plaintiffs have therefore established the existence of a common pay policy or plan. *See Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 996 n. 2 (E.D. Tex. 2011) (finding that plaintiffs submitted sufficient evidence to establish a common pay policy or plan where, through their declarations and the declaration of one other employee, they demonstrated that they shared the same basic job duties and were subject to the same pay practices).

    ii.    ***Are there aggrieved individuals who are similarly situated to Named Plaintiffs?***

Defendant further argues that Plaintiffs are not similarly situated to the putative class members. [Dkt. 21, p. 14]. To satisfy this element, "Plaintiffs must demonstrate a reasonable basis for believing that a class of similarly situated persons exists." *Hernandez*, 191 F. Supp. 3d at 683 (citing *Heeg*, 907 F.Supp.2d at 862). "Potential class members are considered similarly situated to the named plaintiff if they are 'similarly situated in terms of job requirements and similarly situated in terms of payment provisions.'" *Heeg*, 907 F.Supp.2d at 862 (quoting *Ryan v. Staff Care, Inc.*, 497 F.Supp.2d 820, 825 (N.D. Tex.2007)). "The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." *Tice*, 826 F.Supp.2d at 996. A court may, however, "deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Heeg*, 907 F.Supp.2d at 862 (quoting *Aguirre v. SBC Commc'ns, Inc.*, Civil Action No. H–05–3198, 2006 WL 964554, at *5 (S.D. Tex. April 11, 2006)).

The evidence before the Court shows four former and/or current employees of Becht who all claim that they were paid only straight time wages for all the overtime hours they worked during the relevant time period. The presence of more than one plaintiff in an FLSA matter provides some evidence that multiple similarly situated employees have been subjected to the same discriminatory policy or plan. *Hernandez*, 191 F. Supp. 3d at 683; *compare Mason v. Amarillo Plastic Fabricators*, No. 2:15–CV–00109–J, 2015 WL 4481233, at *5 (N.D. Tex. July 22, 2015) (denying conditional certification because there were no other named Plaintiffs with similar allegations of FLSA violations that would indicate that the Defendant may have implemented the same policy with respect to different employees, and that additional plaintiffs may wish to join the collective action suit), *with Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 289–90 (N.D. Tex. 2012) (granting conditional certification despite the absence of affidavits from potential plaintiffs because there were four named plaintiffs who provided declarations stating that they each suffered similar FLSA violations). Named Plaintiffs have produced evidence that they are similarly situated, and Defendant has conceded as much. [Dkt. 21, p. 12].[3] This establishes a meaningful nexus that binds Named Plaintiffs' claims together and supports a conclusion that the similarities in their claims outweigh their differences. It is therefore likely that similarly situated aggrieved individuals exist in this case.

Named Plaintiffs have not, however, put forth evidence to show that Plaintiffs are similarly situated with salaried non-exempt workers. All Named Plaintiffs were hourly employees and they offer no evidence that salaried employees were paid under the same system.

### iii.    *Do Similarly Situated Aggrieved Individuals Want to Opt into the Lawsuit?*

Defendant also argues that Named Plaintiffs have failed to demonstrate others' interest in joining the lawsuit. [Dkt. 21, p. 11]. Defendant offers the affidavit of one of Named Plaintiffs'

---

[3] Defendant states that "[A]ll four Plaintiffs worked in the same facility, in a similar role, for the same supervisor." [Dkt. 21, p. 12].

coworkers, Robert Blake Riley, who asserts that the lawsuit is common knowledge at the Valero Refinery and no other employees wish to join. [Dkt. 21-2, p. 3]. Named Plaintiffs, however, need only show that there is a reasonable basis for believing that other aggrieved individuals exist. *Heeg*, 907 F.Supp.2d at 862. Attached to Named Plaintiffs' motion are their own declarations, which state that they know other similarly situated workers who would be interested to learn about their rights and the opportunity to join this lawsuit. [Dkt. 19-1]. In their declarations, Named Plaintiffs also claim that they did not receive overtime pay, that they were paid straight time wages, and that they know of other workers who are interested in joining the class. [Dkt. 19, p. 2; Dkt. 19-1]. Therefore, Named Plaintiffs have established a reasonable basis for believing that other aggrieved individuals exist who worked at the Valero Refinery and would opt into the class. *See Hernandez*,191 F. Supp. 3d at 681–82 ("By presenting the declarations in which the Plaintiffs stated that despite regularly working more than forty hours per week they did not receive overtime, and that they were paid straight time wages, Plaintiffs have satisfied the first element of the applicable test by showing that there is a reasonable basis for believing that other aggrieved individuals exist who worked as laborers. . . .").

### iv. *Are the claims and defenses in this case appropriate for collective action treatment?*

Finally, Defendant argues that the claims and defenses in this case are not appropriate for collective active treatment because numerous highly individualized inquiries will be required to evaluate the viability of each putative class member's claims. [Dkt. 21, p. 16]. The Court, however, disagrees because, as detailed above, Plaintiffs have met their burden of demonstrating they are similarly situated with the putative class under the *Lusardi* approach.

### B. Scope of Class

The Court now turns to the scope of the class. Named Plaintiffs seek conditional class certification of a nationwide putative class. [Dkt. 19, p. 3]. Defendant argues that, even if the Court determines that some level of notice is appropriate, the scope should be narrowed. [Dkt. 21, p. 19]. As mentioned above, the Court "has the power to modify an FLSA collective action definition on its own" if the "proposed class action does not encompass only similarly situated employees." *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931–32 (5th Cir. 2005).

Named Plaintiffs' evidence, at this time, is insufficient to establish a proper basis for a nationwide collective action even under the lenient conditional certification standard. Named Plaintiffs base their claim of a nation-wide pay system on evidence that shows the pay system at the Valero Refinery was set at the corporate level. [Dkt. 23. pp. 2–4]. As Defendant points out, however, all four declarations upon which Named Plaintiffs rely concern conduct only at Defendant's Valero Refinery in Port Arthur, Texas. [Dkt. 21, pp. 8–9]. Only Costellow and Triplett's declarations aver facts pertaining to other locations, stating that "Becht's management indicated that Becht used the same single pay rate system at other Becht worksites and mentioned a Becht worksite in Alaska as an example." [Dkt. 19-1, pp. 3, 6].

Even assuming that these statements were made by current or former management-level employees with personal knowledge, such a limited and vague sampling of other worksites does not support the Named Plaintiffs' assertion of nationwide violations. *See England v. New Century Financial Corp.*, 370 F.Supp.2d 504, 511 (M.D. La 2005) (finding employees failed to provide sufficient evidence of a nationwide illegal policy where alleged claims were based on local policies at different sites across the country). Plaintiffs' evidence does, however, support the assertion of

violations resulting from a common policy at the Valero Refinery. Accordingly, this Court will approve a collective action on that basis.

The Court notes that this is not a case in which the plaintiffs have ready access to corporate documents and, "while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition . . . we must also take account of [his or her] limited access to crucial information. *See Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 730–31 (5th Cir. 2018) (internal citations omitted). Defendant, on the other hand, correctly argues that "Plaintiffs cannot ask for every document—without time limit—regarding Becht's business and all of its employees." [Dkt. 30, p. 3]. Therefore, if further discovery, in accordance with this Court's Order on Plaintiffs' Motion to Compel [Dkt. 26], reveals evidence supporting a colorable claim for a nationwide putative class, Named Plaintiffs may move this Court to broaden the scope of the certified class.

Defendant also argues that Named Plaintiffs' proposed notice and consent forms are deficient in numerous respects and requests "that the Court instruct the parties to meet and confer regarding the content of the notice and consent form and submit a joint proposed form within fifteen days of the Court's grant of conditional certification." [Dkt. 21, p. 19]. Therefore, the Court orders the parties to confer about the content of the notice, and to provide the Court with a proposed notice within 15 days of the date of this Order. *See Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 473 (S.D. Tex. 2012).

### IV.   SUPPLEMENTAL MOTION TO CERTIFY A CLASS

Named Plaintiffs move this Court to "order Defendant to produce the email addresses and cell phone numbers of all members of the Putative Class for the purpose of emailing and texting Notice to the putative class, in addition to mailing the Notice and Consent to last the known physical

addresses." [Dkt. 33, p. 1]. Defendant contends that this request is "overly and unnecessarily intrusive to the putative class members." [Dkt. 35, p. 1]. The Court agrees with Named Plaintiffs. Defendant must produce the email addresses and cell phone numbers of all members of the Putative Class for the purpose of distributing the notice. *See Dickensheets v. Arc Marine*, LLC, 440 F. Supp.3d 670, 672 (S.D. Tex. 2020) (finding that potential plaintiffs were more likely to receive notice via text message in addition to email and mail). Given the proliferation of text messaging in modern society, Defendant has not shown that this method is overly intrusive. *Id.* (finding that providing notice via text message in addition to other traditional notice methods will almost always be appropriate in modern society).

## CONCLUSION

IT IS THEREFORE ORDERED that this case is conditionally certified as a collective action pursuant to 29 U.S.C. § 216 (b), and that the putative class shall consist of the following:

> **All current and former hourly workers who worked for Defendant at the Valero Refinery in Port Arthur, Texas during the prior three years who were paid a single hourly rate for all hours worked, including hours over 40 in a workweek, and did not receive overtime wages at the correct overtime rate of 1.5 times their regular rate of pay.**

IT IS FURTHER ORDERED that the parties confer regarding Plaintiffs' proposed notice and, within fifteen (15) business days of entry of this Order, counsel for the parties shall submit a proposed agreed notice to the court for approval. The notice shall include the contact information of Named Plaintiffs' and Defendants' counsel and otherwise be consistent with this Order.

**SIGNED this 9th day of December, 2020.**

*Michael J. Truncale*
Michael J. Truncale
United States District Judge