IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

JON M. COSTELLOW,JOHN TRIPLETT,§
BRUCE HALLMAN, CARL HEBERT,    §
CHRISTINE M. MORSE,            §
INDIVIDUALLY AND ON BEHALF OF  §
ALL THOSE SIMILARLY SITUATED   §
                               §
VS                             §    C.A. No. 1:20-CV-00179-MJT
                               §
                               §    COLLECTIVE ACTION
                               §
BECHT ENGINEERING CO., INC.;   §
BECHT FIELD SERVICES, LLC      §

## JOINT MOTION FOR APPROVAL OF SETTLEMENT

Plaintiffs, Jon M. Costellow, John Triplett, Bruce Hallman, Carl Hebert, and Christine M.

Morse, both individually and on behalf of all members of the conditionally-certified collective

action under the Fair Labor Standards Act ("FLSA") (collectively "Plaintiffs") and Defendants

Becht Engineering Co., Inc., and Becht Field Services, LLC, (collectively "Becht" or

"Defendants"), file this Joint Motion for Approval of Settlement, and respectfully show as follows:

## I. CONDITIONAL REQUEST FOR HEARING AND/OR CONFERENCE WITH THE COURT

The Parties have reached agreement on the material terms of a settlement to propose for

approval by the Court and are making every effort to close this matter and fund each of the 55

Plaintiffs before the end of the year. That said, there are a few terms of the Settlement Agreement

on which the Parties have been unable to reach agreement. Regarding these few disputes, the

Parties have agreed to seek the Court's guidance and "ball/strike" ruling if necessary. Accordingly,

the Parties are requesting the Court conduct a conference and/or hearing to consider the proposed

settlement and address the few remaining disputes.

## II.  INTRODUCTION AND BACKGROUND

This Collective Action lawsuit was originally filed on April 27, 2020, by Plaintiff Jon Costellow on behalf of himself and those similarly situated alleging that Plaintiffs were not paid overtime to which they were entitled in violation of the Fair Labor Standards Act ("FLSA"). Specifically, Plaintiffs' Complaint alleged that Becht's practice of paying the same hourly rate for all hours worked, under and over 40 in a workweek, ("Single Rate Pay Policy") violated the FLSA.[1]

By May 8, 2020, Plaintiffs filed their Third Amended Collective Action Complaint adding Named Plaintiffs John Triplett, Bruce Hallman, and Carl Hebert [Doc. 6].  Plaintiffs' Third Amended Complaint sought Conditional Class Certification with Notice to a nationwide class of current and former nonexempt employees who were paid using Becht's Single Rate Pay Policy [Doc. 6].

On July 1, 2020, Plaintiffs filed their Opposed Motion to Certify a Collective Action and Approve Notification to All Putative Collective Action Members on a nationwide basis.  [Doc. 19] Thereafter, Becht filed its Response opposing the requested certification [Doc. 21], followed by Reply and Surreply Briefing by the Parties.  The Named Plaintiffs -- Jon Costellow, John Triplett, Carl Hebert, and Bruce Hallman -- each invested their respective time and knowledge pursuing certification and notice on a nationwide basis, including but not limited to preparing and submitting their respective Declarations.  [Doc. 19-1, Pg. ID 232-244]

On July 31, 2020, Plaintiffs filed a Motion to Compel responses to written discovery and

---

[1]    The phrase "Single Rate Pay Policy" is used for convenience only.  Defendants had no policy by that name.  Rather, primarily at issue in this case was a pay practice by which Defendants calculated a "blended rate" of pay for all hours worked which they believed appropriately compensated their employees for overtime hours worked in a workweek.

deposition testimony pertaining to Becht's use, and scope of use, of the Single Rate Pay Policy. [Doc. 26] Thereafter, Becht filed its Response opposing the Motion to Compel, followed by Reply and Surreply Briefing.

On October 2, 2020, Plaintiffs filed an Opposed Motion for Equitable Tolling seeking to toll limitations for all members of the putative collective action class as of July 1, 2020, the date Plaintiffs filed the Motion for Conditional Class Certification. [Doc. 32] Thereafter, Becht filed its Response opposing the requested tolling, followed by Reply and Surreply Briefing.

On December 9, 2020, the Court issued an Opinion and Order granting in part and denying in part Plaintiffs' Opposed Motion for conditional class certification. [Doc. 41] Specifically, the Court granted Plaintiff's request for certification and notice, but denied certification on a nationwide basis. [Doc. 41] The Court's initial order limited certification and notice to those individuals who worked for Becht at the Valero Refinery in Port Arthur, Texas, as follows:

> All current and former hourly workers who worked for Defendant at the Valero Refinery in Port Arthur, Texas during the prior three years who were paid a single hourly rate for all hours worked, including hours over 40 in a workweek, and did not receive overtime wages at the correct overtime rate of 1.5 times their regular rate of pay.

See [Doc. 41, Pg. 14]    Thereafter, on January 7, 2021, the Court issued a corresponding Order resolving the Parties' remaining disputes concerning the contents and final form of the "Time Sensitive Notice of Rights to Join Collective Action Lawsuit." [Doc. 47] Attached as Exhibit A is the final Time Sensitive Notice of Rights to Join Collective Action Lawsuit containing the Parties' agreed language and rulings of the Court. *See Exhibit A – Time Sensitive Notice with Consent to Join.* The attached Notice with Consent Form was mailed to the above referenced class.

On December 16, 2020, the Court granted Plaintiffs' Opposed Motion for Equitable

Tolling and tolled limitations for members of the putative class as of July 1, 2020.  [Doc. 42]

On December 19, 2020, the Court granted Plaintiffs' Motion to Compel ordering Becht to produce information, documents and corporate testimony concerning Becht's use of the Single Rate Pay Policy, including the scope of Becht's implementation and use of the policy. [Doc. 43] Thereafter, in compliance with the Court's Order, Becht produced 2,000 plus pages of documents (emails, employment and business records, employment agreements, etc.) pertaining to the Single Rate Pay Policy.  Additionally, Becht produced a designated representative – Derek Becht – to provide corporate testimony concerning the documents and Single Rate Pay Policy.  Plaintiffs' counsel took the deposition of Becht over the course of two full days – January 28th and February 2nd, 2021.  Based on the document production and corporate testimony of Derek Becht, Plaintiffs sought to re-urge their request for nationwide certification and notice.

On February 17, 2021, Plaintiffs filed a Motion to Expand the Class and Issue Notice on a nationwide basis, which was supported by Defendants' document production, corporate testimony and the previous declarations of Named Plaintiffs corroborating Becht's use of the Single Rate Pay Policy in Alaska.  [Doc. 52]    In response to Plaintiffs' Motion to Expand, Becht agreed to nationwide notice but continued to dispute that Plaintiffs were owed any additional wages, damages or relief.  [Doc. 56]

On April 6, 2021, the Court entered an Order Granting in Part and Denying in Part Plaintiff's Motion to Expand Class and Issue Nationwide Notice.  [Doc. 60]  With Becht's agreement, the Court granted Plaintiffs' motion to issue nationwide notice to the following putative class:

> Current and former hourly employees of Becht Engineering Co., Inc. or Becht Field Services: (1) who worked for either company at any location(s) within any state of the United States or the District of Columbia between July 1, 2017 and the present; (2) who were paid the same hourly rate for all hours worked in any

workweek including any hours worked over 40 in a workweek; and (3) who were not paid 1.5 times their hourly rate for all hours worked over 40 hours in a work week.

[Doc. 60]  Attached as Exhibit B is the Time Sensitive Notice with Consent Form agreed to by the Parties and approved by the Court.  *See Exhibit B – Nationwide Notice with Consent Form.*  The Notice and Consent Form attached as Exhibit B was sent to the above referenced class in accordance with the terms of the Court's Order.  The consent deadline for the nationwide class was June 20, 2021.

On July 19, 2021, Plaintiffs filed the Fourth Amended Complaint through which Plaintiffs listed all individuals who had consented to join this action.  [Doc. 72][2]  Plaintiffs also added a Named Plaintiff, Christine M. Morse, who worked for Becht on a project in Alaska.  [Doc. 72]  Plaintiffs Fourth Amended Complaint added claims that Becht's Single Rate Pay Policy was in violation of Alaska Wage and Hour Law, which requires overtime pay for all hours worked over 8 in a workday for employees who worked in Alaska.  [Doc. 72]   Plaintiffs Complaint included class allegations under FRCP 23; however, no motion for Rule 23 certification was filed, and this is not a Rule 23 Settlement.   As of this filing, the only Parties and individuals involved in, and/or who are otherwise affected by this lawsuit, are those individuals who opted into this case in accordance with the FLSA in response the Notices attached as Exhibits A & B.   As mentioned below, the Parties agree that this proposed Settlement is limited to only the 55 Plaintiffs who opted into this case by virtue of the FLSA Notice and does not impact the rights of any other current or former employees of Becht.

---

[2]    This is Plaintiffs' "live" pleading.  Plaintiffs' Second, Third, and Fourth Amended Complaints [Docs. 4, 6, and 72] all contained an allegation by Plaintiff Jon Costellow only of retaliation under Section 15 of the FLSA, 29 U.S.C. § 215.  However, Plaintiff Costellow filed a Stipulation of Dismissal of this claim [Doc. 91], and the Court entered its order dismissing this claim without prejudice.  [Doc. 93].  Accordingly, the only claims remaining in this lawsuit are the collective claims for overtime wages.

On August 23, 2021, Becht filed a Partial Motion to Dismiss Without Prejudice seeking to dismiss all Plaintiffs who worked for Becht outside of Texas, on the grounds the Court lacked personal jurisdiction over said individuals.  [Doc. 75]  Defendants' Motion sought to dismiss all 39 Plaintiffs who worked for Defendant in Alaska and the claims of 13 opt-in Plaintiffs to the extent that the work they performed for Becht was outside of the state of Texas pursuant to the Supreme Court holding in *Bristol –Myers Squibb Co. v. Superior Court of Ca., San Francisco Cty.,* 137 S.Ct. 1773 (2017)  [Doc. 75]  Plaintiffs filed their Response in opposition to Defendant's Motion to Dismiss which relied on substantial evidence, including the Declaration of Named Plaintiff Christine Morse and documents Morse provided corroborating Becht's relevant connections in Texas supporting this Court's exercise of personal jurisdiction over out-of-state workers, and particularly those opt-ins from the Alaska project.  [Doc. 83, Doc. 83-8].  The Parties filed additional briefs in support of their respective positions concerning Becht's Motion to Dismiss.

On October 15, 2021, Plaintiffs filed an Opposed Motion to Amend the Court's prior Order for Equitable Tolling [Doc. 42] to cover those individuals who were part of the expanded, nationwide class referenced in Exhibit B.  [Doc. 97]  Plaintiffs Motion asked the Court to toll the limitations for the expanded class opt-ins as of July 1, 2020, the same date the Court tolled limitations for the initial group of opt-ins. [Doc. 97]   Defendants filed their respective Response opposing tolling, followed by Reply briefing by both Parties.    Thereafter, Plaintiffs filed a Supplement to the Opposed Motion for Equitable Tolling.  [Doc. 125]

On November 5, 2021, Plaintiffs filed their Motion for Partial Summary Judgment through which Plaintiffs sought summary judgment on their claims under the FLSA – including overtime, liquidated damages and imposition of the 3 year limitations period.  [Doc. 102]  On that same day,

November 5, 2021, Defendants filed their Motion for Partial Summary Judgment , asserting that there was no evidence sufficient to create a triable issue that any violation of the FLSA was willful and that, therefore, the two year statute of limitations under the FLSA applied and not the three year statute of limitations. [Doc. 103][3] The Parties filed their respective responses and reply/surreply briefing to the cross motions for partial summary judgment.

On November 12, 2021, Plaintiffs filed a Motion to Compel seeking production of additional documents related to the Single Rate Pay Policy. [Doc. 108] Defendants filed their response opposing the Motion to Compel, and the dispute was referred to Magistrate Judge Stetson. [Doc. 132]

On March 1, 2022, the Court conducted an oral hearing, during which the Parties' counsel addressed their respective positions on the dispositive motions pending before the Court – Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 75], Defendants' Motion for Partial Summary Judgment [Doc. 103], and Plaintiffs' Motion for Partial Summary Judgment [Doc. 102].

On March 16, 2022, Magistrate Judge Stetson issued an Order granting in part and denying in part Plaintiffs' Motion to Compel. [Doc. 133] In compliance with the Court's Order, Becht produced more documents related to the Single Rate Pay Policy. Thereafter, Plaintiffs filed Supplemental evidence in support of Plaintiffs' Motion for Partial Summary Judgment and opposition to Defendants Motion for Partial Summary Judgment. [Doc. 135]

On March 21, 2022, the Court issued an Order denying Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, thereby allowing all "out-of-state" opt-ins – primarily consisting of

---

[3]    There is no "willfulness" issue under Alaska's wage and hour law. There is only a two year statute of limitations. AS 23.10.130.

those Alaska opt-ins -- to remain Parties in this case.  [Doc. 134]  The Court's opinion observed the probable effect that the Alaska opt-ins would have been completely time barred had the Court granted Defendants' Motion to Dismiss.  [Doc. 134, Pg. 13]

On July 11, 2022, the Court entered an Order granting Plaintiffs' Motions to include the nationwide opt-ins in the Court's original Tolling Order, thereby effectively tolling limitations for opt-ins as of July 1, 2020.  [Doc. 143]    Notably, as it impacts the determination of the reasonableness of the settlement, Defendants previously indicated their intention to challenge this decision on appeal, in the absence of a settlement.

On July 14, 2022, the Court entered an Order granting in part and denying in part the Parties' respective Motions for Partial Summary Judgment.  [Doc. 144]    The Court's ruling granted partial summary judgment that Becht's Single Rate Pay Policy violated the FLSA, entitling Plaintiffs to recover unpaid overtime wages for the statutory two year period looking back from July 1, 2020.  Otherwise, the Court identified evidence supporting each Parties' respective position on the issues of willfulness (*i.e.*, whether the two year or three year statute of limitations applied to the FLSA claims) and good faith (*i.e.*, whether or not an award of liquidated damages was appropriate) and directed that those issues be set for a jury trial.

### **Mediation**

Following the Court's rulings on the dispositive motions, the Parties agreed to mediate with mediator Dennis Clifford.  Mr. Clifford has significant experience litigating and mediating wage and hour cases involving the issues in this case.   Within the context of preparing for and attending mediation, Becht produced true and accurate payroll data for each of the Plaintiffs showing their days/weeks worked, hourly rates, and compensation during the applicable 2 and 3 year periods, during which Becht was using the Single Rate Pay Policy.  The data was produced

in sufficient time and format to be useful in meaningful settlement discussions.  Using this information, the Parties created various models in conjunction with mediation. The exchange of this information allowed the Parties to form a basis for productive negotiations.

Appearing at mediation were Defendants' company representatives and each of the Named Plaintiffs.

While the Parties did not reach a final settlement on the day of mediation, significant progress was made, such that the remaining material terms of a settlement were reached shortly thereafter.   The settlement represents a compromise of all claims at issue between the Defendants and those Plaintiffs who submitted Consents to Join this action.

Following the mediation, the Parties have prepared a formal Settlement Agreement, and made arrangements for funding payments. The settlement agreement and related documents are attached to this Motion for the Court's review as Exhibit C. *See Exhibit C – Settlement Agreement and Release*   However, while the Parties have agreed on most of the terms of the Settlement Agreement, there are provisions which, while they disagree on the terms, the Parties do agree are appropriate for the Court's determination.  The provisions on which the Parties request the Court's decision are referenced in the attached Exhibit C, among which chiefly concern, (1) the manner of the disposition of the funds relating to any uncashed or unclaimed settlement checks, and (2) whether the settlement agreement can be used in any future action seeking certification or opposing decertification of a class, among  a few other issues that need "ball/strike" guidance and ruling. The Parties' respective proposals are set forth in Exhibit C attached hereto, and should the Court direct, the Parties will provide briefing to the Court to address the issues.[4]    The terms of the

---

[4]       To assist the Court in its review of the Parties' respective proposals to the matters over which they disagree, Defendants' Proposals are highlighted in blue, and Plaintiffs' Proposals are highlighted in yellow.  Again, for those few terms in dispute, the Parties have agreed submit those disputes to the Court.

settlement and Court's resolution of any outstanding disputes in the terms of the Settlement Agreement, have been approved by the Named Plaintiffs, Plaintiffs' counsel, Defendant, and Defendant's counsel.

Two opt-in Plaintiffs – Herman Chandler and Debra Hastings – are not making a recovery, as neither qualified for overtime compensation during the applicable time period under the provisions of the FLSA.

The above Background is by no means a complete description of the litigation of this case. For instance, and without limitation, the Parties engaged in the following formal written discovery,

(i) written discovery served on each of the Named Plaintiffs and multiple opt-in Plaintiffs;

(ii) written discovery served on Defendants – Multiple sets of Interrogatories, Requests for Production and Subpoena Duces Tecum accompanying notices of deposition; and

(iii) records subpoena to the Alaska Department of Labor concerning complaints against Becht.

As indicated above, there were multiple motions to compel surrounding the written discovery. Additionally, Plaintiffs' counsel took several depositions, some of which lasted multiple days, including the following:    Becht's corporate representative - Derek Becht (President, Plant Services), Matthew Wizeman (Chief Financial Officer/V.P. Business Administration), Libby West (General Counsel), Danny Davis (Site Manager), and Paula Lazer (former V.P. Business Administration).  Additionally, Plaintiffs' counsel took the deposition of the Director of the Wage & Hour Division of the Alaska Department of Labor, Tanya Keith.  Defendant's counsel took the deposition of Class Representatives Jon Costellow and John Triplett and of opt-in Plaintiffs Richard Creel and John New.

Based upon Class Counsel's investigation, legal evaluation, and taking into account the contested legal and factual issues involved, including Class Counsel's assessment of the

uncertainties of litigation and anticipated appeals, and the relative benefits conferred upon the Plaintiffs pursuant to the settlement reached by the Parties, Class Counsel has concluded that a settlement is fair, reasonable, adequate, and in the best interests of the Plaintiffs.

Without any admission of liability, Defendants desire to compromise and settle the collective action claims by Plaintiffs alleged in the lawsuit -- unpaid overtime wages, liquidated or other damages, penalties, restitution, attorneys' fees, costs, and interest, under the FLSA and Alaska state law.

As shown through this Motion, the proposed settlement is the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after two years of litigation. The terms of the settlement are reasonable and appropriate and fair to all Parties involved. Accordingly, the Parties jointly request that the Court enter an order approving the settlement.

**Settlement Terms**

As set forth in the Settlement Agreement and Release attached to this Motion (Exhibit C), the Parties reached a settlement of the claims of the Named Plaintiffs and FLSA Opt-ins. The only Plaintiffs who are parties to this Settlement are the 55 Plaintiffs (which includes the Named Plaintiffs) who opted into this case by virtue of the FLSA Notice, and who qualify for recovery.[5] The Parties agree that this Settlement does not impact the rights of any other current or former employees of Defendants.

Becht has agreed to pay the total of $3,225,000, plus court costs of $25,000 to settle this lawsuit, and all claims for wages, damages, attorney fees, costs and relief sought in the lawsuit.

---

[5]  This figure does not include the two opt-ins, Deborah Kimball Hastings and Herman Chandler, who did not have overtime during the applicable time period compensable under the provisions of the FLSA. Their respective claims will be dismissed.

Each Plaintiff's damage model/recovery is based on the number of overtime hours reflected in their respective payroll data and timesheets for the time period Becht used the Single Rate Pay Policy between July1, 2020 and July 1, 2017.  The damage payments are based on the full amount of unpaid overtime during the applicable 2 year period, in accordance with the Court's Tolling Order and true and accurate payroll data and time copies of original records provided by Becht, which are based off hours worked data inputted by the Plaintiffs.  The damage payments will include a percentage of any unpaid time falling within the 3rd year period, as reflected in the referenced payroll data and time records.   The total amount of the damage payments is $1,835,000 ("Damage Payments").  The amount of each individual's damage payment will be issued as 50% wages and 50% non-wages.

Because Plaintiffs have already filed consents to participate, the Claims Administrator, Simpluris, Inc., will issue checks to the individuals following receipt of the respective Plaintiff's W-4 and W-9, as provided for in the attached Exhibit C.    By virtue of the attached Notices and corresponding Consents to Sue and Join (Exhibits A & B), the Opt-Ins have agreed to release their respective claims for unpaid wages, unpaid overtime, unpaid work for the time period covered by the Notice – July 1, 2017 thru July 1, 2020.

In addition to these funds, Becht has agreed to pay Service Awards of $20,000 to each of the Named Plaintiffs, subject to approval by the Court.  These Service Awards are separate and in addition to the Damage Payments.  Becht is responsible for all costs associated with Simpluris, Inc's administration of the Settlement.

Becht agrees to pay $1,315,000 to Plaintiffs' counsel for reasonable attorneys' fees ($1,290,000) and costs ($25,000), subject to approval by the Court.

### III.  ARGUMENT

The Parties seek Court approval of their agreed settlement.  The settlement represents a fair

and reasonable compromise of the bona fide legal and factual disputes in this case.

While court approval is not necessarily required in the Fifth Circuit, *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d, 247, 254-255 (5th Cir. 2012), the Parties are seeking approval of their settlement because plaintiffs' claims arise under the FLSA. *See* 29 U.S.C. § 216; *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *D. A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 90 L. Ed. 1114 (1946); and *Jarrard v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947).   A settlement should be approved if it reflects a "reasonable compromise over issues actually in dispute."  *See Lynn's Food Stores*, 679 F.2d at 1354; *Vassallo v. Goodman Networks, Inc.,* 4:15-CV-97-LG-CMC 2016 U.S. Dist. LEXIS 142379 *2 - *3 (E.D. Tex. October 13, 2016)  ("The requirement of an adversarial posture between the parties to a settlement agreement operates as a guarantee that employers cannot profit by coercing employees into waiving their rights, and then dressing that invalid waiver of the FLSA's protections as a valid settlement of a legal claim.")  *Id.,* at *3 *citing  Sims v. Housing Auth. City of El Paso*, No. EP-10-CV-109-PKC, 2011 U.S. Dist. LEXIS 98809, 2011 WL 3862194, at *6 (W.D. Tex. Sept. 1, 2011).  "The primary focus of the Court's inquiry in deciding whether to approve the settlement of a FLSA collective action is not on due process concerns as it would be for a Rule 23 class action . . . . Rather[,] the Court primarily focuses on ensuring that an employer does not take advantage of its employees in settling their claim for wages." *Collins v. Sanderson Farms, Inc*., 568 F. Supp. 2d 714, 719 (E.D. La. 2008).

In scrutinizing approval of an FLSA settlement agreement, the Court must determine that the compromise is a fair and reasonable resolution of a bona fide dispute over the FLSA's provisions.  *See Vassallo v. Goodman Networks, Inc.,* 4:15-CV-97-LG-CMC, 2016 U.S. Dist. LEXIS 142379 (E.D. Tex. October 13, 2016); *Jones v. JGC Dallas LLC,* 3:11-CV-2743-O, 2014

U.S. Dist. LEXIS 177472 (N.D. Tex. November 12, 2014).

Once the Court finds there is a bona fide dispute, it reviews the settlement agreement to insure it is fair and reasonable. *Sims v. Hous. Auth. City of El Paso,* EP-10-CV-109-PRM, 2012 U.S. Dist. LEXIS 190164 at *3 (W.D. Tex. Feb. 29, 2012)  In evaluating the fairness and reasonableness of a proposed settlement, Courts will employ the factors set forth in *FRCP* 23 (e). *Id.* at *9.

### A.    BONE FIDE FACTUAL AND LEGAL DISPUTES EXIST

Congress has recognized that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part that endangered national health and efficiency and, as a result, the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706–07, 65 S.Ct. 895, 89 L.Ed. 1296 (1945).[6]  Due to this unequal bargaining power, Courts must ensure that a settlement agreement, following a FLSA claim, is the product of a bone fide dispute.  As noted below, the Court's Opinion and Orders on the Parties' cross Motions for Partial Summary Judgment acknowledge the existence of bona fide disputes requiring a trial on the merits.

In the instant case, the Parties fiercely contested the claims and defenses asserted. Plaintiffs alleged that Becht's non-exempt employees who were paid using the Single Rate Pay Policy were not paid all of their overtime due, because Becht's pay practice failed to properly calculate the

---

[6]    *Brooklyn Savings Bank*, 324 U.S. 697 (1945)(requiring Court or Department of Labor approval for FLSA settlements and explaining the low standard for judicial review when the parties are represented by counsel); *see also Evans v. Jeff D.*, 475 U.S. 717. 726-27 (1986) (in deciding whether the proposed settlement reflects a "reasonable compromise" of a bona fide dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

overtime rate for all hours worked over 40 in a workweek and misclassified Plaintiffs as exempt. Becht disputed Plaintiffs' claims taking the position that the Single Rate Pay Policy was properly applied in compliance with the FLSA and the corresponding exemptions authorized by the FLSA and federal regulations permitting use of a blended rate.

The Parties further disagreed on whether Plaintiffs could satisfy their burden to demonstrate that Defendants acted willfully, which in turn affects whether Plaintiffs' recovery would be limited to two (2) years or three (3) years under the FLSA. *See* 29 U.S.C. § 255. Plaintiffs also contend that Becht would not be able to meet its burden to prove that it acted in good faith, which would implicate the amount, if any, of liquidated damages. *See* 29 U.S.C. § 260. Becht maintained that at all times, it did not willfully violate the FLSA and, accordingly, damages (if any) should be recovered only for a two (2) year period. In support of their position, Becht pointed to the research and investigation of employees who were responsible for compliance with wage and hour laws, that Becht's pay practice was intended to pay overtime, and that each employee signed a written agreement accepting the terms of employment. Similarly, Becht has contended that it acted in good faith under a reasonable belief that it was in compliance with both the FLSA and Alaska wage and hour laws.

Importantly, the Court's Opinion and Order denying the Parties' respective motions for summary judgment concerning liquidated damages and willfulness, acknowledged the bona fide dispute surrounding Plaintiffs' claims for liquidated damages and willfulness necessitating a jury trial on said issues. [Doc. 144]   The significance of the Court's observations is particularly important given that liquidated damages is generally a matter for the Court to decide.

Additionally, Becht takes the position that the original Tolling Order should not have applied to the nationwide opt-ins and stated its intention to raise that point on appeal, which

necessarily involves evaluation of the uncertain outcome, and delays associated with appeals.

Lastly, Becht's jurisdictional challenge would also be the subject of an appeal.

As reflected by all of the filings, arguments, documentation, hearings, discovery, and motions in the instant suit, the current settlement before the Court is the result of a bone fide dispute which accounts for the above circumstances.

### B.    FAIR AND REASONABLE SETTLEMENT

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.' " *Domingue v. Sun Elec. & Instrumentation, Inc.,* 2010 WL 1688793, at *1 (M.D.La.2010) (citing *Camp v. Progressive Corp.,* 2004 WL 2149079, at *5 (E.D.La.2004)). As well, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending similar claims for years. All counsel believe this settlement represents a fair and reasonable compromise of the disputed legal and factual issues in this case. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F.Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

After they reached an agreement on the monetary amounts for the settlement, the Parties engaged in further negotiations concerning the specific terms of the written settlement document.

Further, it is important to note that the named Plaintiffs, on behalf of their coworkers, all deem this settlement fair and reasonable under the circumstances. The Named Plaintiffs took an active role in this litigation, staying informed on its status, assisting with obtaining relief, and participating in mediation.

## IV.   REQUEST FOR ATTORNEY FEES & COSTS

The attorney fees in this matter are 40% of the total common fund amount of $3,225,000. As stated in the Notices of Rights to Join, attorney fees are to be paid on a contingency fee basis with Class Counsel receiving a percentage of the money recovered as fees, together with reimbursement of costs and expenses of litigation. *See Exhibits A & B, Provision 14 – "How Will the Lawyers be Paid?"*

Separately, the Consents to Sue and Join filed with the Court expressly provide that the attorney fees will be the greater of 40% of the gross settlement or amount received from the Court, whichever is greater. *See Exhibits A & B*    Additionally, the Named Plaintiffs entered into a contingency fee agreement in which they agreed that attorney fees would be 40% of the total recovery with reimbursement of costs and expenses from the amount remaining following payment of fees.   Following precedent approving the stated percentage, Class Counsel request the Court approve the 40% contingency fee from the total common fund amount.[7]

---

[7]     *See Hiser v. NZone Gidance, LLC,* 2021 Lexis 131524 at *7-8 (W.D. Tex. Jan. 25, 2021*); Sarabia v. Spitzer Indus., Inc.* 2018 LEXIS 197062 at *4 (S.D. Tex. Nov. 19, 2018); *Matthews v. Priority Energy Servs., LLC*, No. 6:15-cv-448, 2018 U.S. Dist. LEXIS 82716, 2018 WL 1939327, at *2 (E.D. Tex. Apr. 20, 2018); *Daniels v. Prod. Mgmt. Indus., LLC*, No. 6:15-cv-2567, 2018 U.S. Dist. LEXIS 76933, 2018 WL 1954352, at *4 (W.D. La. Apr. 20, 2018); *See Legros v. Mud Control Equip., Co.,* C.A. No. 15-1082, 2017 LEXIS 32723 *10 (W.D. La., March 6, 2017) (approving contingency fee of 40% in collective action);  *Heffernan Bryant v. United Furniture Indus., Inc.*, No. 1:13-cv-246-SA-DAS, 2017 U.S. Dist. LEXIS 22280, 2017 WL 639320, at *5 (N.D. Miss. Feb. 16, 2017); *Barnard et al v. Interek USA, Inc.,* No. Civ. A. 4:11-cv-02198 (S.D. Tex., Jan. 8, 2014); Doc. 184 (approving 40% contingency fee in FLSA collective action); *Green-Johnson v. Fircroft, et al,* No. Civ. A. 4:12-cv-01307 (S.D. Tex., April 3, 2013); Doc. 50 (approving 40% contingency fee in an FLSA collective action); *Covey, et al v. Iron Cactus, et al,*; No. Civ. A. 1:12-cv-00111-SS (W.D. Tex., Aug. 6, 2013) (approving 40%

The total costs and expenses incurred by Class Counsel as of this filing is $27,196.84. *See Exhibit D – Declaration of Mark Frasher.* Defendants are paying $25,000 toward costs, reducing the outstanding costs to $2,196.84 which will be borne by Plaintiffs according to their pro rata share of recovery.

"[U]se of a common fund to pay attorney's fees in class action settlements is well established." *Dyson v. Stuart Petroleum Testers, Inc.,* C.A. 1-15-cv-282, 2016 LEXIS 24190 (W.D. Tex. Feb. 29, 2016); *Klein v. O'Neal, Inc.,* 705 F. Supp. 2d 632, 673 (N.D. Tex. 2010). The percentage method is appropriately reviewed under the framework set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir.1974) to determine whether the fee is reasonable. *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 860 (E.D. La 2007) (citing Strong, 137 F.3d at 851-52 & n.5); *See Legros v. Mud Control Equip., Co.,* C.A. No. 15-1082, 2017 LEXIS 32723 *10 (W.D. La., March 6, 2017). Under that framework, a benchmark fee is checked against twelve factors to determine the ultimate reasonableness of the fee. *See Strong*, 137 F.3d at 850.

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the claimant's attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the claimant or the circumstances; (8) the amount of recovery involved and the results obtained; (9) counsel's experience, reputation, and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the claimant; and (12) awards in similar cases.

A court is authorized to enhance or decrease the amount of attorney's fees based on the above factors. *See Legros v. Mud Control Equip., Co.,* C.A. No. 15-1082, 2017 LEXIS 32723 *9

---

contingency fee in FLSA collective action); *Villareal, et al v. Source Refrigeration & HVAC, Inc.,* No. Civ. A. 1:12-cv-00243 (W.D. Tex., Oct. 8, 2013); Doc. 71 (J. Sparks) (approving 40% contingency fee in FLSA collective action).

(W.D. La., March 6, 2017) *citing Black v. SettlePou, P.C.,* 732 F.3d 492, 502 (5ᵗʰ Cir. 2013).  Here,

the following *Johnson* factors support the proposed fees, as follows:

1. <u>Time and Labor</u> – This case has spanned over 2 years, 8 depositions (Noticed by either Plaintiffs and or Defendants), substantial document production, substantial motion practice (both dispositive and non-dispositive), mediation, and resulted in the undersigned Plaintiff's counsel (Mark Frasher and John Werner) expending in excess of 771.4 hours of time devoted to this matter, which time does not account for all time expended by attorneys and support staff.  *See Exhibit D  – Declaration of Mark Frasher.*

2. <u>Novelty & Difficulty of Questions</u> – The questions of fact and law in this matter are of sufficient difficulty so as to require a jury trial and involve consideration and interpretation of FLSA exemptions.  If Plaintiffs succeed in obtaining a Final Judgment against Defendants, Plaintiffs anticipate an appeal which will necessarily involve consideration of Defendants' jurisdictional challenge, tolling, alter-ego and joint employer issues, and evidentiary challenges.  By reaching a settlement now, the parties avoid the costs and risks of further complex proceedings in the trial court and appellate courts.  *Ehrheart v. Verizon Wireless,* 608 F.3d 59, 595 (3ʳᵈ Cir. 2010).

3. <u>Skill to Perform Legal Services</u> – The complexity of the issues and defensive matters raised in this case required particular skill to navigate a recovery for all opt-in Plaintiffs, and included disputes concerning jurisdiction, tolling, and applicability of exemptions. Class Counsel possesses the requisite experience and skill providing the legal services involved in this case.  *See Exhibit D  – Declaration of Mark Frasher.*

4. <u>The Preclusion of Other Employment Due to Acceptance of the Case</u>.
   This guideline involves consideration of otherwise available work which is foreclosed because of conflicts of interest which occur from the representation, and also the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718.   Here, this case required substantial time and effort, which precluded the involved attorneys performing other available fee-generating work during the relevant period of time. *See Exhibit D – Declaration of Mark Frasher.*

5. <u>Customary Fee</u> – The proposed contingency fee is consistent with other matters and has been accepted in other FLSA collective actions in the Eastern District, and other courts within the Fifth Circuit. *See cases cited in Note 7*

6. <u>Whether the Fee is Fixed or Contingent</u>. "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case. This factor considers the financial risks a contingency fee arrangement places on counsel." *Kemp v. Unum Life Ins. Co. of Am.*, No. 14-0944, 2015 U.S. Dist. LEXIS 166164, at *28-29 (E.D. La. Dec. 11, 2015). As set forth in the Court approved Notice, each FLSA Opt-In Plaintiff agreed that attorney

fees would be paid on a contingency fee basis with Class Counsel receiving a percentage of the money recovered as fees, together with reimbursement of costs and expenses of litigation. *See Exhibits A & B.* In signing the FLSA Consent Sue and Join, the Opt-In Plaintiffs set forth that they understood Class Counsel would be paid the greater of a 40% contingency fee, or amount paid by the Defendants. *See Exhibits A & B.* As such, Plaintiffs benefited from experienced counsel handling this case on a contingency fee basis, and Class Counsel bore all litigation expenses and assumed the risk of nonpayment if the Plaintiffs claims were ultimately unsuccessful.

7. <u>Time Limitations</u>. "Priority work that delays the lawyer's other legal work is entitled to some premium." *Johnson*, 488 F.2d at 718. The significant time and resources devoted to this case, as reflected above and in the Court's docket, precluded Class Counsel from working on other fee-generating work.

8. <u>Amount of Recovery Involved and Results Obtained</u> - The recovery involved compensates all opt-ins who were qualified to recover overtime compensation during the relevant timeframe. In this regard, the Plaintiffs are recovering amounts that equate to most if not all of the unpaid overtime. Specifically, by virtue of the Plaintiffs discovery and motion practice, the Court issued nationwide notice and granted tolling, such that Plaintiffs were able to maximize the time period covered for each individual who qualified for overtime under the FLSA. Additionally, the Court granted a partial summary judgment covering the applicable two year period. The instant settlement is for amounts equal to the full recovery of the two year claims, plus recovery of a percentage of the third year.

9. <u>Counsel's Experience, Reputation, and Ability</u> – The undersigned has handled numerous FLSA matters in the Eastern District of Texas. *See Exhibit D – Declaration of Mark Frasher.*

10. <u>The Undesirability of the Case</u> – As set forth in the analysis of the sixth *Johnson* factor, Class Counsel accepted this case on a contingency fee basis, knowing they would receive payment *only if* the plaintiffs won or settled.

11. <u>Nature and Length of the Professional Relationship</u> – As note above, Class Counsel has represented the Named Plaintiffs in this consolidated action for two plus years and have worked consistently with these individuals to investigate the nature of the claim, conduct discovery, present and respond dispositive motions, prepare a strategy for mediation, and reach an excellent settlement on behalf of the class

12. <u>Awards in Similar Cases</u> - The range of recovery in this matter, following reduction for the requested fees and pro rata share of costs, is commensurate with the range of recovery in other matters involving the difficult issues, defenses involved in this case, and uncertainty of trial and anticipated appeals. *See cases cited in Note 2.*

**A.      The Lodestar Cross-Check Supports the Attorneys' Fees Requested**

While not required in the Fifth Circuit, after utilizing the percentage method, district courts often perform a lodestar cross-check. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 644 (5th Cir. 2012); *In re Oil Spill by Oil Rig "Deepwater Horizon,* 2016 LEXIS 147378 at *61 (E.D. La. Oct. 25, 2016) (applying "an additional step, cross-checking the award against a "rough lodestar analysis"). Under the lodestar method, the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012). Here, counsel's customary hourly rates in this matter are set forth in the Declaration of Mark Frasher and are in line with the customary rates charged for experienced counsel in complex employment matters (including FLSA matters) in the Eastern District. *See Frasher Declaration*; ($400/hour for Mark Frasher; $450/hour for John Werner; and $145/hour for Paralegals); *Little v. Tech. Specialty Prods., LLC,* 2014 LEXIS 105069 *17 - *19 (E.D. Tex., July 31, 2014) *See, e.g., Miller v. Raytheon Co.*, 716 F.3d 138, 149 (5th Cir. 2013) (finding $577.50, $542.50, and $280 in age discrimination case after considering Texas state bar surveys, attorneys' fees in similar cases, and the skills of the attorneys); *Bazile v. City of Houston*, No. H-08-2404, 2013 U.S. Dist. LEXIS 153381, 2013 WL 5775596, at *3 (S.D. Tex. Oct. 25, 2013) (finding the hourly rate of $425 and $400 in race discrimination case reasonable); *Black v. SettlePou, P.C.*, No. 3:10-cv-1418-K, 2012 U.S. Dist. LEXIS 120506, 2012 WL 3638681, at *4 (N.D. Tex. Aug. 24, 2012) (finding the hourly rates of $450 and $375 in an FLSA case reasonable), *rev'd on other grounds by* 732 F.3d 492 (5th Cir. 2013); *Fluor Vorp. v. Citadel Equity Fund, Ltd.*, No. 3:08-cv-1556-B (JJB), 2011 U.S. Dist. LEXIS 96771, 2011 WL 3820704, at *5 (N.D. Tex. Aug. 26, 2011) ("In other cases involving Texas

lawyers, the hourly rates range from $220 for associates to $510 for senior partners."); *Champion v. ADT Sec., Servs., Inc.,* No. 2:08-cv-417, 2010 LEXIS 121012 *8-9 (E.D. Tex. Nov. 16, 2010).

When the number of hours reasonably worked on a client's case is multiplied by the reasonable hourly blended rate ($425.00/hour – midpoint between Mark Frasher and John Werner) described above, the total lodestar amount to date is $327,845. After calculating the lodestar amount, the Court may increase or decrease the amount using the lodestar multiplier. *Union Asset Mgmt. Holding A.G.*, *supra*, 669 F.3d at 642-643. The use of multipliers is acceptable in a common fund case and multipliers are regularly awarded. *Altier v. Worley Catastrophe Response, LLC*, No. 11-241, 2012 U.S. Dist. LEXIS 6391, at *72-74 (E.D. La. Jan. 18, 2012); 3 Newberg on Class Actions § 14.03 at 14-5)) (**surveying multipliers in common fund cases and finding a range of 0.6 to 19.6**); *In re Enron Corp. Sec., Derivative & ERISA Litig*., 586 F. Supp. 2d 732, 798-801 (S.D. Tex. Sept. 8, 2008) (discussing multipliers awarded and used as lodestar cross-checks). Here, application of a multiplier of 3.93is justified, and commensurate with the common fund percentage of 40%.[8] Specifically, the significant investment of time was necessary due to the variety of defenses, among which included jurisdictional challenges, initial challenges to nationwide certification, and objections to tolling limitations a majority of the Opt-Ins. On these issues standing alone, Plaintiffs obtained favorable rulings, which allowed all opt-ins to proceed before this Court and include a maximum number of days worked by virtue of tolling. These favorable rulings are in addition to Plaintiff's obtaining a partial summary judgment. Based on the record, the 40% fee is fair and warranted.

Applying the above authorities to the record before the Court, Plaintiffs move the Court

---

[8] *See* Newberg on Class Actions § 14.03 at 14-5)) (surveying multipliers in common fund cases and finding a range of 0.6 to 19.6, with more than three-fourths between 1.0 and 4.0).

approve the requested fee of 40% of the total common fund in the amount of $1,290,000 and costs of $25,000.

## IV. CONCLUSION

The Parties hereby request that the Court, in conjunction with approving the proposed settlement: (1) resolve the disputes on the issues upon which the Parties have not reached agreement as set forth on p. 9; and (2) approve the other terms of the settlement as fair, including all of the terms set forth in the settlement agreement. A proposed order is attached hereto for the Court's consideration.

Dated: October 20, 2022                              Respectfully submitted,

/s/ Mark Frasher
John Werner
Mark Frasher
REAUD, MORGAN & QUINN, L.L.P.
801 Laurel Street
P. O. Box 26005
Beaumont, Texas 77720-6005
(409) 838-1000 (phone)

*Attorneys for Plaintiffs*

/s/ Joseph G. Galagaza (*with permission*)
Joseph G. Galagaza
Texas Bar No. 07572600
JACKSON LEWIS P.C.
717 Texas Avenue, Suite 1700
Houston, Texas  77002
(713) 650-0404 [Telephone]
(713) 650-0405 [Facsimile]
joseph.galagaza@jacksonlewis.com [Email]

*Attorney for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served upon all counsel of record by electronic mail by the Clerk of the Court via the CM/ECF system on October <u>20</u>, 2022.

*/s/ Mark Frasher*
Mark Frasher
